UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHILA EATON and JAKE EATON,

Plaintiffs,

v.

MICHAEL and FRANCINE MAIL,

Defendants.

Case No. C08-5538FDB

ORDER DENYING PLAINTIFFS'
MOTION FOR PROTECTIVE
ORDER AND DISMISSING CAUSE
OF ACTION

## INTRODUCTION

Plaintiffs filed a Complaint for declaratory judgment on September 5, 2008 seeking a declaration that (1) the Quinault Indian Nation lacks either personal or subject matter jurisdiction over Plaintiffs, who are non-Indians residing off the reservation, to enter any form of grandparent visitation order; (2) Plaintiffs' constitutional rights of freedom of association, due process, and *ex post facto* protection are violated by applying changes in the law that occur during the pendency of the action, which are effectively applied retroactively; and (3) the various rulings of the Quinault Tribal Court are invalid and without effect, *nunc pro tunc*.

Plaintiff Shila Eaton and Jordan Mail, who never married, had a child M.M., now referred to as M.E, who was born July 27, 2001. Jordan, a member of the Quinault Indian Nation, died in an

ORDER - 1

automobile accident on March 10, 2002. In December 2004, Jake Eaton, joined by Shila Eaton, both non-Indians, filed a Petition for Adoption of M.M (M.E.) in Grays Harbor Superior Court, Grays Harbor, Washington. A decree of adoption was entered on December 20, 2004. The Tribe contends that pursuant to the Indian Child Welfare Act (ICWA) and Washington Law (RCW 26.27.201), an adoption proceeding concerning an "Indian child" requires the parties to provide notice to the "Indian child's tribe," and the Tribe contends that it did not receive notice.

Defendants, Michael and Francine Mail, are the paternal grandparents of the minor child, M.E., and are enrolled members of the Quinault Tribe who reside on the Quinault Indian Reservation. The last time the grandparents visited M.E. was February 2005, when M.E. was about three and one-half years old. Shila Eaton states that in 2005 she did restrict Defendants Mail to short visits, in a public place, under close supervision because of a history of problems interacting with the Mail family and because of M.E.'s young age.

On December 28, 2006, the Mails sought visitation rights with M.E. by filing a Petition for "Grandparental Visitation" in the Quinault Tribal Court, and served the Eatons with the Petition. The Tribal Court entered final Findings of Fact and Conclusions of Law on August 25, 2008. The Eatons contend that the Tribal Court matter was "under advisement" for eighteen months; the Mails describe there being "prolonged litigation." The Eatons have argued in Tribal Court that the Tribe had no jurisdiction over Non-Indians who reside off-reservation. The Tribal Court ruled that Defendants Mail are allowed to take M.E. from his mother's custody every Saturday, without restrictions, for an unspecified duration of time. The Eatons filed two motions for reconsideration, which were denied by the Tribal Court. It is not known whether there is provision for appeal from the Tribal Court's decision or, if so, whether the Eatons filed such appeal.

Counsel for the respective parties have met and the Mails' counsel indicated that the Eatons should seek a restraining order and that the Mails would be pursuing contempt of court charges in

ORDER - 2

the Tribal Court. Shila and Jake Eaton now move in this case for a protective order to maintain the status quo of no visitation until the jurisdictional issues have been resolved.

## MOTION FOR PROTECTIVE ORDER

## (INJUNCTIVE RELIEF)

While styled as a protective order, what the Eatons are seeking is an order prohibiting the Mails from taking any action to enforce the above-described order issued by the Quinault Tribal Court pending further order of this Court or final resolution of the Complaint for declaratory judgment in this case.

To obtain injunctive relief, a plaintiff must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) serious questions are raised and the balance of hardships tips sharply in plaintiff's favor. *First Brands Corp. V. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987) *See also Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 722-23 (9th Cir. 1985) and *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). . "These are not two separate tests, but 'extremes of a single continuum.'" *Benda v. Grand Lodge of Int'l Assoc. Of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978).

The Eatons argue that in general, the tribal court has civil jurisdiction over non-Indians only if one of three tests is met: (1) "express congressional delegation," (2) "taxation, licensing, or other means [regulating] the activities of nonmembers who enter into consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements," or (3) "conduct of non-Indians on fee lands within [the] reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United States*, 450 U.S. 544, 564-66 (1981).

The Eatons argue that only the first test is arguably applicable here, as the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901-1963, expressly grants tribal courts jurisdiction in the matters of adoption and custody of Indian children. The Eatons contend that the Quinault Tribal

ORDER - 3

Court Judge, in his orders, acknowledged that jurisdiction in this case is, at best, concurrent with the jurisdiction of the State of Washington.

The Eatons concede that the Quinault Tribal Code, at all material times in this case, has contained a section authorizing grandparent visitation orders. QTC 19.04, and later, 19.08. The Eatons point out, however, that under Washington law, no grandparent or third-party visitation order is possible because the only statutory authority, RCW 26.09.240, has been declared unconstitutional citing *Troxell v. Granville,* 530 U.S. 57 (2000). Moreover, the Eatons argue that the ICWA at 25 U.S.C. § 1921 provides that the rights of a parent of an Indian child are the greater of whatever rights shall be afforded under any applicable state or federal law. Thus, the Eatons argue that the inability of Washington State courts to impose a third-party visitation order is a greater protection of a parent's rights than when a third-party visitation order is imposed. In summary, the Eatons argue that (1) there is no congressional grant of authority under the ICWA or otherwise to order third-party visitation against non-Indians under the facts of this case and (2) regardless of whether or not the ICWA establishes a basis for the Tribal Court jurisdiction, since the visitation order could not issue under concurrent Washington State law, the ICWA precludes jurisdiction for the Quinault Tribal Court to issue any third party visitation order.

On the issue of irreparable harm, the Eatons cite the history of problems with the Mail family. In summary the Eatons argue that there is the potential psychological effect on M.E. should be suddenly be forced to spend all day every Saturday away from his mother and step-father with people he does not know, as well as the effect on Shila Eaton given her personal history with the Mail family. The Eatons assert that at one point, Jordon attempted to physically take Malaki from Shila's custody with the knowledge and assistance of Defendant Francine Mail. The Eatons also assert that on numerous occasions there have been both direct and implied threats from various members of the Mail family directed toward Shila, and that Shila has long feared that if M.E. were taken onto Indian lands, she would have great difficulty getting him back. Furthermore, the Eatons assert that

ORDER - 4

Defendants Mail and various members of their family have repeatedly made derogatory and disparaging remarks about each of the Plaintiffs herein. The Eatons assert that given M.E.'s age (7, (D.O.B July 27, 2001)) and the length of time since he has seen Defendants Mail (since February 2005 (3-1/2 years old)), it seems unlikely that M.E. will even recognize Defendants Mail let along be comfortable around them. Additionally, the Eatons state that Defendants Mail have been apprised of Shila's fears and concerns, but that neither Defendants Mail nor their counsel have done anything to alleviate those fears and concerns.

Defendants Mail argue that the Eatons are not likely to succeed on the merits or to demonstrate that they will suffer irreparable harm without the injunctive relief sought. The Mails argue that *Montana* provides the test for civil tribal jurisdiction over nonmembers, not members; the underlying custody case here, in contrast, involved the child, M.E., a Quinault member, a necessary party. Nevertheless, the Mails argue that this Court need not address *Montana* but deny the Plaintiffs Eatons' motion and dismiss the case based upon the Doctrine of Tribal Exhaustion or failure to join a necessary party, M.E. The Mails explain that the doctrine stems from three specific policy concerns: (1) congressional policy to support tribal self-government; (2) to promote orderly administration of justice; and (3) to obtain the benefits of tribal expertise, citing *Texaco, Inc. v. Zah*, 5 F.3d 1374 (10th Cir. 1993).

## DISCUSSION

Plaintiffs' Complaint did not state the basis for this Court's subject matter jurisdiction, so this is the first question that this Court must address. Under 28 U.S.C. § 1331, a district court has jurisdiction over a cause of action where a non-Indian challenges a tribal court's jurisdiction. *Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir. 2004). The "question whether an Indian tribe retains the power to compel a non-Indian ... to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850-53 (1985).

ORDER - 5

Being satisfied that this Court has federal question jurisdiction over this case, the next question concerns whether the exhaustion of tribal court remedies is required. Under the doctrine of exhaustion of tribal court remedies, relief may not be sought in federal court until appellate review of a pending matter in a tribal court is complete. *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987).

The Mails argue that the Eatons are not likely to succeed on the merits in this case because this Court must deny the Eatons' motion and dismiss this cause of action on the basis of failure to exhaust tribal court remedies or failure to join M.E. as a necessary party. The Mails cite to several cases involving the application of the doctrine of exhaustion of tribal court remedies. One, *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943 (9th Cir. 2008), is remarkable similar to the facts in the Eatons' case. In *Atwood*, a non-Indian father sued his Indian daughter's maternal aunt, who was seeking custody of his daughter after the death of her Indian mother and the Tribal Court's decision granting temporary custody to the child's maternal grandmother. The Ninth Circuit affirmed dismissal based on the plaintiff's failure to exhaust tribal court remedies. Another similar case, *Boozer v. Wilder*, 381 F.3d 931 (9th Cir. 2004) dismissed a non-Indian father's case challenging the Colville Indian Tribe's jurisdiction to handle a custody dispute concerning his daughter, who was a member of the Tribe, for failure to exhaust tribal court remedies.

Next, the Mails argue that the Eatons will not be irreparably harmed without the relief they seek. The Mails argue that the harm alleged by the Eatons is that to M.E. who is not a party herein. The Mails also argue that even if the alleged harms to M.E. are considered to be the Eatons' harm, these harms are (1) not supported, (2) unreasonable, and do not meet the legal standard for a protective order. Mails' argue that the Eatons fail to identify how the concern over bad relations would cause "irreparable injury," and argue that another means, such as use of a third-party to facilitate visitations, rather than injunctive relief. Additionally, the Eatons' argument that M.E.'s

current lack of a relationship with the grandparents fails to show how this is the Eatons' irreparable harm.

The Mails also argue that the Eatons cannot show the existence of serious questions; a Federal court does not have jurisdiction over the question of tribal adjudicatory jurisdiction in this case until all tribal remedies are exhausted, citing *Atwood, supra*. The Mails argue that while the Eatons focus their arguments on the tribal court's jurisdiction over themselves, the Quinault Tribal Court has jurisdiction over member children under Quinault law, federal law, and relevant case law. The Mails argue that pursuant to the ICWA, "[t]he United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity." 25 U.S.C. § 1911(d). The ICWA further declares that "child custody proceeding" shall mean and include – (i) "foster care placement," which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservatory where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903 (1).

Finally, the Mails argue that the Eatons cannot show that the balance of hardships tips sharply in their favor. The Mails argue that the Eatons have submitted no expert or disinterested party evidence, but simply a recitation of problems with the relationship between the Eatons and the Mails.

The Eatons reply listing the harm that might arise if a the protective order is not granted: (1) infringement of Shila Eaton's fundamental Constitutional parental rights, (2) infringement of Shila Eaton's Due Process rights in giving force to a tribal court order that could not have been granted under state law, (3) forcing a non-Indian to submit to the civil jurisdiction of a tribal court when such

ORDER - 7

jurisdiction ordinarily, or at least, arguably, does not otherwise exist, and (4) the likelihood of psychological and emotional trauma to both mother and child.

**CONCLUSION**

The Eatons have failed to show this Court that the doctrine of exhaustion of tribal court proceedings ought not to be applied in this case. Plaintiffs argue that the issue of exhaustion is not before the Court at this time, and that if it were to be raised after the Court addresses the Eatons's motion for a protective order, there are exceptions to the doctrine, including futility and harassment. This argument is without merit; as stated in *Boozer*, "Although '§ 1331 encompasses the federal question whether a tribal court has exceeded the lawful limits of its jurisdiction, ... exhaustion is required before such a claim may be entertained by a federal court.'" 381 F.3d at 935, citing *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 857. The Ninth Circuit continued, "A federal court must give the tribal court a full opportunity to determine its own jurisdiction, which includes exhausting opportunities for appellate review in tribal courts." *Boozer*, *id.*

While there are exceptions to the exhaustion requirement, Plaintiffs did not submit that any exception was applicable here, arguing instead that only Plaintiff's motion for a protective order is before the Court and that the exhaustion issue is not now before the Court. The problem with Plaintiffs' argument is that in analyzing whether injunctive relief ought to be granted, the Federal court must make an assessment on the merits of the Plaintiffs' case. Under Ninth Circuit precedent, the extent of the Tribal Court's jurisdiction in this matter is to be determined by the Tribal Court in the first instance. Plaintiffs' Complaint asserts that the Quinault Tribal Court lacks jurisdiction to enter any grandparent or other non-parental visitation order; that such order violates Mrs. Eaton's parental authority and federal rights of freedom of association, due process, etc.; and that such an order granting grandparents visitation violates any express grant of jurisdiction. All these matters relate to the Tribal Court's jurisdiction, which under the cited jurisprudence, the Tribal Court may review. The Eatons have failed to demonstrate that they have exhausted their remedies in Quinault

ORDER - 8

Tribal Court. The Eatons may assert their arguments on appeal of the Tribal Court's findings and conclusions. The matter may be resolved differently on appeal, and the Court will, therefore, dismiss this cause of action.

NOW, THEREFORE,

IT IS ORDERED: Plaintiffs' Motion for a Protective Order [Dkt. # 5], construed as a motion for injunctive relief to maintain the status quo, is DENIED, and this cause of action is DISMISSED for failure to exhaust Quinault Tribal Court remedies.

DATED this 7th day of October 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE